## NASHVILLE, CHATTANOOGA AND SAINT LOUIS RAILWAY COMPANY *v.* PRIEST, by next friend.

The plaintiff being a trespasser upon the premises of the defendant railway company, it owed her no duty of protection until her presence was actually discovered by its servants, notwithstanding she was a child of tender years ; and it not affirmatively appearing from the allegations of her petition that, after she was seen by one of the defendant's employees, the conduct of any of them was so grossly negligent as to indicate a willful and wanton disregard for her safety, the company's general demurrer should have been sustained.

Argued May 8, — Decided June 26, 1903.

Action for damages. Before Judge Henry. Floyd superior court. September 30, 1902.

*Payne & Tye, W. J. Neel,* and *P. H. Doyal,* for plaintiff in error.
*McHenry & Maddox, Fouché & Fouché,* and *Moses Wright,* contra.

SIMMONS, C. J.     The question presented for decision in this case is whether or not the trial court erred in overruling a demurrer to the plaintiff's petition.     The suit was instituted in her name by W. D. Priest as her next friend, and was predicated upon the following allegations of fact:     The defendant railway company has a passenger and freight depot in the city of Rome, Ga., which "is surrounded by platforms, yards, and railroad tracks, upon which tracks cars and engines are run and operated, and in, upon, and across which passengers and the public generally are accustomed and allowed to pass."     On the 25th of February, 1902, the plaintiff, who was then twelve years of age, went with her brother, who was a year older, to the company's depot.     On one of the adjacent tracks were standing two or three freight-cars.     "Being young and indiscreet children, and being unconscious of any danger, by reason of their tender years, and no engine or cars being then in sight or hearing, they climbed upon said cars and there remained, in full view of all passers-by and in sight of the operatives, servants, and agents of the defendant, had they been in the exercise of any care or diligence.     After petitioner and her brother had been upon said cars for some time, petitioner's attention was suddenly arrested by an engine which had approached near to said cars from the south; and as said engine continued to approach the car upon which petitioner was standing, one of the servants or agents of defendant called loudly to petitioner, 'Get down off of that car, or you will be killed.'     Petitioner became very much alarmed and excited by reason of the approaching engine and the harsh, loud order to get off said car, as aforesaid; and believing that she was in very great danger and peril, to save herself from the danger apprehended by a collision between the car upon which she was standing and the approaching engine, she jumped from said car to the ground," a distance of about twelve feet, and broke one of the bones in her left leg near the ankle.     The plaintiff's position on the car was in full view of "those in charge of said engine and those on the ground, and she could have been readily seen or observed in the exercise of any care whatever on their part, but ... no signal was given of the approach of said engine to said car, and no effort on the part

of those in charge of said engine was made to stop the same, and no notice or care was taken of her, save the rough and hasty command" above mentioned. The company's demurrer was based on the general ground that no cause of action was set forth in the plaintiff's petition, and upon the further ground that the allegations thereof did not disclose the names of the company's servants who were charged with negligence, or in any way identify them by stating what connection they had with the defendant's business or what particular positions they occupied, etc., etc. The plaintiff undertook to meet the special objections just indicated, by offering an amendment to her petition, in which she stated that the names of these employees of the company were unknown to her, and that she was, for lack of information, unable to allege what positions they occupied or what particular duties they owed the defendant.

Doubtless the plaintiff's petition was sufficiently full and explicit, as thus amended, respecting the identity of the employees of whose conduct she complained. See *Woodson* v. *Johnston,* 109 *Ga.* 454. The general ground of the demurrer should, however, have been sustained. On the argument before this court, counsel for the defendant in error very properly conceded that she was a trespasser upon the premises of the defendant company. Though a child only twelve years of age may oftentimes occupy a much better position than would an adult under similar circumstances, in that a plea of tender years can be made to a charge of contributory negligence on the part of a child, yet it remains true that a trespasser, be he man or infant, is not legally entitled to complain of lack of diligence on the part of a third person which falls short of gross negligence. See, in this connection, the full and able discussion of this subject and the authorities cited in the opinion delivered by Mr. Justice Fish, in *S., F. & W. R. Co.* v. *Beavers,* 113 *Ga.* 398. Under the facts disclosed by the plaintiff's petition, the company was certainly not liable on the idea that its servants did not sooner discover her presence on top of the car, notwithstanding she was in full view and might have been seen by them had they been in the exercise of ordinary care. *Underwood* v. *W. & A. R. Co.,* 105 *Ga.* 48, 50; *Grady* v. *Georgia R. Co.,* 112 *Ga.* 668, and cases cited. This is so for the reason that the company owed no duty to her until her presence actually became known to its servants. *A. & C. Air-Line R. Co.* v. *Gravitt,* 93 *Ga.* 370; *S., F. & W. R.*

*Co.* v. *Waller*, 97 *Ga.* 166–7.   So far as appears, the plaintiff was not placed in a situation of real peril by the approach of the engine to the car on which she was standing.   Indeed, the pleader does not attempt to do more than allege that the plaintiff " became very much alarmed and excited by reason of the approaching engine and the harsh, loud order to get off said car, . . and, believing that she was in very great danger and peril," jumped to the ground in order " to save herself from the danger apprehended by a collision between the car upon which she was standing and the approaching engine."   In other words, there is no pretense that a collision was, in point of fact, imminent or even probable at the time she was told by a servant of the company to get down from the car. It is not even alleged that the approaching engine was upon the same track as that upon which stood the car.   Evidently the plaintiff's case was not planted on the ground that she was compelled to jump in order to avoid injury which she otherwise would have suffered, nor upon the theory that those of the company's servants who were upon the engine had knowledge of her presence in a situation of peril, but nevertheless wantonly neglected to take any steps to stop the engine before it reached the car on the top of which she was standing.   On the contrary, she seeks a recovery on the idea that the defendant is chargeable with negligence, (1) because its servants did not exercise ordinary care in the matter of looking out for trespassers, and (2) because, after her presence became known to the employee who told her to get off the car, the company's servants did not observe the proper precautions to prevent frightening her and causing her to do the rash act of jumping a distance of some twelve feet to the ground.   As has been already remarked, the company owed no duty to her until her presence on its premises actually became known to its servants.   The question upon which the case should be made to turn, therefore, is:   Were they thereafter guilty of conduct evidencing a willful or wanton disregard for her safety?   She does not profess to know or undertake to assert that any one on the engine had notice that she had climbed on top of the car; so it does not appear that those in charge of the engine were called upon to take any steps to avoid frightening her. The mere fact that at the time she jumped the engine was approaching the car on which she stood can not, of itself alone, be relied on as showing reckless and wanton conduct.   Knowledge of her situa-

tion is shown to have been had by one employee only, the one who told her to get down from the car.    Where he was at that time, whether on the ground near by or upon the engine, is not disclosed, the plaintiff in the amendment to her petition stating her want of information in this regard.    There is no allegation to the effect that he was guilty of negligence in not communicating his knowledge to those on the engine, or in not taking other steps to have it stopped, in order that the plaintiff might not be frightened by its further approach.    The only claim of negligence made in this connection is that "no signal was given of the approach of said engine, and no effort on the part of those in charge of said engine was made to stop the same."    The company certainly owed no duty to trespassers generally to warn them by signal every time its engine was put in motion; and unless those in charge of it had knowledge of the plaintiff's presence, their failure to make any effort to stop it before it came close enough to the car to cause her to apprehend danger can not be regarded as a negligent omission of duty on the part of the company.    As has been seen, there is nothing alleged upon which to base even a conclusion that the employee just referred to was one of those on the engine, or that any of them had knowledge concerning the plaintiff's whereabouts.    This employee "called loudly to petitioner, 'Get down off of that car, or you will be killed.'"    He did not tell her to jump, nor can it be assumed he expected her to do so or anticipated that she would become alarmed and act rashly.    No circumstances are set forth in the plaintiff's petition which indicate that there was any necessity for haste, or that a child twelve years of age might think there was. How close, if close at all, the approaching engine was at the time does not appear.    For aught that the petition discloses, the engine might have been at such a distance that even a very prudent man would have had no reason to suppose she would become alarmed and, instead of alighting from the car by the means she had used in climbing on top of it, jump to the ground and suffer injury.    Be this as it may, however, no facts are alleged which go to show that under the surrounding circumstances at the time the plaintiff was ordered to get down from the car, the conduct of the employee who told her to do so amounted to a reckless, willful, or wanton disregard of her safety.    He may have acted thoughtlessly and heedlessly in not anticipating that, if he told her she would be killed

unless she got down, she might construe what he said as meaning she was in imminent peril because of the approaching engine, become frightened, and lose her presence of mind; but if so, his inconsiderate action could hardly be called gross negligence, or anything more than a failure to observe the prudence and foresight reasonably to be expected of one exercising ordinary care and diligence in the premises.   We are accordingly of the opinion that the plaintiff did not in her pleadings state a case entitling her to a recovery against the defendant company. .

*Judgment reversed.    All the Justices concur.*